UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DARNELL WESLEY MOON, | ) |
| | ) |
| Plaintiff, | ) No. 1:15-CV-167 RLW |
| | ) |
| v. | ) |
| | ) |
| JOHN JORDAN, SHERRIF, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' Renewed Motion for Summary Judgment (ECF No. 47). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

---

[1] Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

In support of its motion for summary judgment, Defendants submitted a Statement of Uncontroverted Material Facts (ECF No. 49) listing seventy-two (72) uncontroverted facts with citations to the record. Moon, however, did not respond to Defendants' statement of uncontroverted facts. Instead, Moon provided seventeen (17) statements of disputed facts (ECF No. 72). Moon's statement of disputed facts did not provide any citations to the record, nor did it specifically state the paragraph number in Defendants' listing of facts that is disputed.

Plaintiff Wesley Moon is a Sunni Muslim, who was previously confined at the Cape Girardeau County Jail ("the Jail") from May 21, 2015 through June 18, 2015. Moon was brought to the Jail by the United States Marshals.

John Jordan is the Sheriff of Cape Girardeau County, Missouri. Tina Henderson is a Lieutenant at the Cape Girardeau County Sheriff's Department. Todd Stevens is a Lieutenant with the Cape Girardeau County Sheriff's Department. James Mulcahy is a Captain with the Cape Girardeau County Sheriff's Department. Ruth Ann Dickerson is a Captain with the Cape Girardeau County Sheriff's Department. Moon is suing each Defendant in his or her individual capacity for monetary damages and in his or her official capacity for injunctive relief. Moon brings claims under 42 U.S.C. §1983 and 28 U.S.C. §§2000cc, *et. seq.* Defendants Kristopher Seib and Aaron Cheney have never been served by Moon. Defendants John Jordan, James Mulcahy, T.C. Stevens, Ruth Ann Dickerson and Tina Henderson are the only Defendants that have answered Moon's Amended Complaint.

When a detainee is brought to the Jail and is going to be placed in the general population, the individual is required to be booked into the Jail and to provide certain information about medical history and personal history. The detainee receives various written instructions and policies from the jail. Once a detainee is booked into the Jail, the detainee is required to remove his clothes in a shower or changing room. The detainee then places his clothes in a container that will be washed and then put in an inmate property locker. Each detainee that is brought into

---

Accordingly, Moon did not meet the requirements of Local Rule 4 .01(E), and he is deemed to have admitted all facts in Defendants' statements of uncontroverted facts. *Deichmann v. Boeing Co.*, 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), *aff'd,* 232 F.3d 907 (8th Cir.2000), *cert. denied,* 531 U.S. 877, 121 S.Ct. 184, 148 L.Ed.2d 127; *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006).

the Jail is required to take a shower that contains a disinfectant to kill any lice or bedbugs or other type of conditions that a detainee might bring into the jail. After the detainee has showered, he is provided an orange jail shirt, orange pants, two towels, a laundry bag, blanket, two sheets, a roll of toilet paper, a cup, spork, and one hygiene care package. The hygiene care package includes toothpaste, toothbrush, soap, comb, and deodorant. Dental floss is not provided. The inmate is also provided with white brief underwear and a pair of shoes and socks. When Moon was booked into the Jail on May 21, 2015, he received the items set forth above.

If mattresses are flat as a result of damage, then they are replaced. Likewise, torn or damaged blankets are replaced. Lt. Stevens is unaware of any flat mattresses during the period of time that Moon was incarcerated in the Jail.

All of the pods at the Jail are provided with cleaning supplies only a daily basis. It is the responsibility of the detainees to clean the pod and their separate jail cells. Defendants assert there is no black mold in the Jail. The showers in the Jail are sprayed with disinfectant and scrubbed down at least weekly by jail personnel. Dirt may accumulate on the shower walls when many detainees are taking showers, but the showers are washed off on a regular basis. There is a communal toilet in each pod and it is the responsibility of the pod to clean the communal toilet, although it is rarely used. Lt. Stevens is unaware of any issue with brown water in Moon's cell. There are separate water lines to the toilet and the sink, although the sink and the toilet are one unit.

If Moon desired a copy of the Holy Qur'an, he could have had it brought into the Jail by someone from outside the Jail. The Jail does not keep copies of the Holy Qur'an in the jail nor does it have an Arabic language Qur'an in the Jail. The Jail does not provide Islamic prayer rugs

to its Muslim detainees. Muslim detainees, however, are allowed to use their blankets during prayer periods.

The Jail does not allow any clocks in the pods or jail cells for safety and security.

If a Muslim detainee wants to clean himself after using the restroom he has containers and a cup in his jail cell that he can use.

The food service at the Jail is contracted through a third party vendor. Any meat products that are served to detainees in the Jail are turkey based, and no pork or beef are contained in any of the food products served to detainees. The food service with the Jail provides nutritious and balanced meals for the detainees. The food service prepares the menus and presents them to the Jail and the Jail then reviews the menu to make sure the type of food being prepared is acceptable for the various detainees.

The Jail has a television in each pod connected to limited cable service. The cable service does not provide Jumu'ah service and there are no televised Jumu'ah services available at the Jail.

The Jail does not regularly provide an Imam for Muslim detainees. However, if a Muslim detainees desire to have an Imam present for services, the detainee may contact the Imam at the local mosque and see if an Imam will provide services to the Muslim detainee. The Jail allows ministers and other persons to meet with inmates and detainees on a scheduled visitation.

The Jail does not allow kufi or Islamic headgear in or outside the jail. If covering up ones' head is a requirement to be outside, a cap will be provided.

While in the G-Pod, other inmates complained about Moon's actions, including spitting in a water jug, breaking chemical bottles, urinating on the floor, dumping Kool-Aid, writing on

the walls, throwing trays on the floor, and creating a disturbance in the pod. As a result of Moon's actions, he was removed from G-Pod for his own safety due to the other inmates' complaints.

On average, the Jail houses 207 inmates per day. The Jail is a transitional or temporary facility where the average length of stay is less than six months. The Jail houses males, females and U.S. Marshals hold detainees. The Jail has two shifts per day and the number of jailers and has four (4) corrections officers on duty per shift. The duties of jailers includes walking through the jail, handling disturbances, processing grievances, handling medical requests, transporting detainees to medical professionals, providing court supervision, transporting inmates to court, handling commissary requests, taking bonds for people being released, addressing the public, passing out meals, and handling mail for the inmates.

Beginning January 1, 2014, the Jail instituted a "postcard only" policy for all non-privileged correspondence entering the jail facility. Prior to January 1, 2014, the Jail received 50-150 pieces of non-legal or otherwise non-privileged mail per day. After the Jail implemented the postcard only policy, the Jail received approximately 50 postcards per day. The postcards had to be standard white postcards, with no index cards or photographs, not larger than 5" x 7", containing a legible return address. The purpose of the postcard only policy was to create a higher level of safety and security within the jail facility, to make it more difficult for contraband to enter the facility, and allow for less manpower for opening and searching mail. Previously, it would take one to two correctional officers to open and scan all non-privileged mail for 30 minutes to two hours to go through the mail. After implementing the postcard only policy, sorting the mail required only 30 minutes. Prior to implementing the postcard only policy, the mail contained lewd and inappropriate photographs, information from the internet regarding

other inmates, information about escape plans or other illegal activity, and contraband. The Jail affords multiple means of communication for inmates, including telephone privileges, video conferencing privileges, the postcard policy and the email policy. The email policy allows incoming emails to inmates and detainees. The emails are limited to 500 words or less with a cost of .35 cents per email and .50 cents per photograph. Video conferencing is also available for $5.00 for 15 minutes of time with the inmate.

The Jail argues that time saved reviewing postcards, as opposed to going through letters, allows the Jail to be more efficient and secure. Since it implemented the postcard only policy, the Jail has experienced no instances of contraband being introduced into the Jail through non-privileged mail.

## DISCUSSION

### I. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Postcard Only Policy

Moon claims that the Jail's postcard only policy for incoming non-privileged mail violates his First Amendment rights. Moons claims that "defendants have no 'legitimate penological reason' for establishing the 'postcard only' policy, and that the policy was established in part [at] the direction of the Securus Technologies, which has a contract for phone and visits at the jail so that Securus could make more money on video, and telephone calls made by inmates." (ECF No. 73 at 1).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261, 96 L. Ed. 2d 64 (1987). The United States Supreme Court has

outlined several factors are relevant in determining the reasonableness of the regulation at issue.[2] "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (1987) (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). "A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90.

The Court holds that the postcard only policy adopted by the Jail satisfies the four factors outlined in *Turner*. The postcard only policy provides a higher level of safety and security for the jail facility. The policy eliminates incoming contraband in the mail and decreases the time that jailers spend away from monitoring inmates and opening mail. Second, the postcard only policy provides ample alternative means for inmates to communicate with the outside world. As previously discussed, the jail provides telephone, email and video conferencing access. The Court holds that these alternative means of communication are sufficient as a matter of law. *See Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003)) ("Alternatives to the type or amount of speech at issue 'need not be ideal ... they need only be available.'"). Third, the Court holds that the postcard only policy has a positive impact on the availability of correction officers to provide security to the inmates because the Jail can allocate manpower and resources from opening mail for several hours a day.

---

[2] These factors are frequently referred to as the "*Turner* factors."

As noted, the postcard only policy allows the jailers to open and distribute mail for only around 30 minutes a day, in contrast to nearly two hours under the previous policy. In addition, the Court notes that the postcard only policy further secures the Jail by preventing contraband, including drugs, tobacco products, paperclips, casenet filings and other newspaper clippings that would adversely affect the jail environment. Finally, the Court holds that Moon's failure to advance any readily-available reasonable alternative bolsters the reasonableness of postcard only prison regulation. Contrary to Moon's allegations in his Complaint, the postcard only policy does not prevent him from receiving mail. In fact, Moon is permitted to receive unlimited amounts of mail, but such mail must conform to the regulations in the postcard only policy. The Court further notes that the postcard only policy has been affirmed as a viable and reasonable means of providing security while allowing communication with the outside world. *See Simpson v. Cty. of Cape Girardeau*, 202 F. Supp. 3d 1062, 1071 (E.D. Mo. 2016) ("the Court finds that defendant's postcard-only policy is reasonably related to legitimate penological interests"). Therefore, the Court grants summary judgment regarding the postcard only policy in favor of Defendants.

### C. Conditions of Confinement

Moon further complains that his conditions of confinement at the Jail violated constitutional standards. Specifically, Moon states that the jail was filthy, with blood-stained underwear and panties on the floor, mold on the walls; dirty holding cells; filthy shower room; moldly walls in the E-Pod; communal toilet with feces; and brown water in the sink with the toilet and sink connected. Moon also claims was not provided a toothbrush, toothpaste, soap, comb, deodorant or shower shoes.

Moon, a pretrial detainee, was entitled to "'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir.2003) (quoting *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983)); *Stickley v. Byrd,* 703 F.3d 421, 423 (8th Cir. 2013). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir. 2010); *Stickley,* 703 F.3d at 423. Hence, pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989)); *Stickley,* 703 F.3d at 423.

Here, the violations alleged by Moon are all either were not severe enough or of a sufficient duration to constitute a Constitutional violation. "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) (quoting *Hutto v. Finney,* 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978)); *see also Whitnack v. Douglas Cty.,* 16 F.3d 954, 958 (8th Cir. 1994) (no Eighth Circuit violation where "the intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable"). First, Lt. Stevens attested that the dirty clothes represented individuals' clothes that were changed out before the individual took a shower and put on a jail uniform. Soon thereafter, the clothes were washed and place in the inmate's property. As such, the Court holds that this temporary condition does not rise to the level of a constitutional violation.

Likewise, Defendants have attested that the black substances in the jail showers were ordinary grime, not black mold. In any event, the shower walls were scrubbed weekly with

bleach and the inmates were given cleaning supplies. Lt. Stevens attested that, although the sink and the toilet are one unit, they have separate piping, which would make cross-contamination unlikely. Although Moon complained that he did not receive hygienic products, the Jail policy is to provide a hygiene care package, including toothpaste, toothbrush, soap, comb and deodorant, as part of the booking process. The Jail does not provide dental floss for the safety and security of its inmates. Moon was provided white boxer briefs, as well as shoes and socks.

The Court also finds no constitutional violation regarding Moon's allegations that the mattresses were flat and blankets were torn or damaged. Lt. Stevens indicated in his affidavit that flat mattresses and torn or damaged blankets are replaced. Nothing in the record indicates that Moon filed a grievance regarding his mattress or blanket. In any event, a flat mattress or a torn blanket does not rise to the level of a constitutional violation. *See Smith v. Copeland*, 87 F.3d 265, 267-68 (8th Cir. 1996); *see also Blackwell v. Selig*, 26 F. App'x 591, 593 (8th Cir. 2001) ("sleeping on the floor on a four-inch thick mattress for five nights did not amount to an unconstitutional condition of confinement, particularly when Blackwell failed to show defendants knew he suffered pain whenever he raised his mattress to allow his cell door to be opened").

The Court further finds no constitutional violation regarding a denial of recreation. Moon fails to identify the length of duration for which he was denied recreation. Nor has Moon identified any adverse health effects from the lack of recreation. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (citing *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985) ("lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened"). Therefore, the Court finds no constitutional violation based upon Moon's alleged lack of recreation and grants summary judgment in favor of Defenants.

The refusal to install electronic law library likewise does not constitute a constitutional violation. Moon admits that he had a federal public defender for his criminal case, but claims that he also has a constitutional right to an "Electronic Law Library." Moon cites to no federal law to support his alleged right to an electronic law library under such circumstances. *See Stanko v. Patton*, 568 F. Supp. 2d 1061, 1075 (D. Neb. 2008), *aff'd*, 357 F. App'x 738 (8th Cir. 2009) (citing *Kane v. Garcia Espitia*, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005) ("the affirmative legal obligation is satisfied when the prisoner has been offered or provided a lawyer"). Moon has failed to allege that any deficiencies in Jail's legal resources resulted in any actual injury in case. *See Gray v. McQuilliams*, 14 F. App'x 726, 727 (8th Cir. 2001); *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (inmate cannot establish relevant actual injury simply by establishing that prison law library or legal-assistance program is theoretically subpar, but must demonstrate that alleged shortcomings hindered efforts to pursue legal claim).

Finally, Moon claims that he was placed in segregation in retaliation for filing grievances. The Court, however, holds that the evidence supports a finding that Moon was moved for his own safety and due to problems in his pod. Moon was moved out of G-Pod because of complaints by other prisoners that Moon spit in water jugs, broke chemical bottles, urinated on the floor, dumped Kool-Aid, wrote on walls, threw trays on the flood, and instigated trouble. *See Hutto v. Finney*, 437 U.S. 678, 686, 98 S. Ct. 2565, 2571, 57 L. Ed. 2d 522 (1978) ("It is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual. If new conditions of confinement are not materially different from those affecting other prisoners, a transfer for the duration of a prisoner's sentence might be completely unobjectionable and well

within the authority of the prison administrator."). Therefore, the Court grants summary judgment in favor of Defendants on Moon's condition of confinement claims.

### D. Religious Claims

Moon claims to be a Sunni Muslim. Moon alleges various claims associated with his religious beliefs, including claims that Defendants violated his free exercise of religion under the First Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA).[3] He claims that the Jail failed to provide the Holy Qur'an and an Arabic language Qur'an, a clock in his pod to tell him when to pray, an Islamic prayer rug, a bottle for cleaning himself after using the restroom, televised Jumu'ah services, an Imam to provide religious services.[4]

In analyzing a Free Exercise claim, the Court "consider[s] first the threshold issue of whether the challenged governmental action infringes upon a sincerely held religious belief and then [applies] the *Turner* factors to determine if the regulation restricting the religious practice is reasonably related to legitimate penological objectives." *Turner*, 482 U.S. 78 (internal quotations and citations omitted). The Court gives "great deference to the judgment and expertise of prison officials, particularly with respect to decisions that implicate institutional security." *Turner*, 482 U.S. 78 (internal quotations and citation omitted); *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 831–32 (8th Cir. 2009). Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system. "Constitutional

---

[3] Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc-1, *et seq.*, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution[.]" 42 U.S.C. §2000cc-1(a).

[4] Since his filing, Moon has moved to dismiss his claim regarding the alleged failure to provide Jumu'ah services. (ECF No. 68). The Court granted Moon's motion to dismiss Moon's RLUIPA claim as to Jumu'ah services with prejudice. (ECF No. 84).

claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 81, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004); *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832 (8th Cir. 2009). RLUIPA requires that Moon show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion. 42 U.S.C. § 2000cc-2(b). To constitute a substantial burden, the government policy or actions must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (alteration in original) (citation omitted); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004).

The Court holds that Moon's claims under the Free Exercise Clause and RLUIPA fail as a matter of law under the undisputed evidence. First, Moon's claim that he was not provided an Islamic Halal diet fails as a matter of law. Moon asserts that he requested an Islamic Halal diet, but fails to show the type of Halal diet he requested. *See, e.g., Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810 (8th Cir. 2008) ("Patel converted to Islam while in prison and now believes that he must consume a *halal* (or 'lawful') diet, which prohibits the consumption of pork and

other items deemed *haram* (or 'unlawful'). Some forms of Islamic dietary restrictions are stricter than others."). Defendants note that the Jails' food services are contracted to a third-party vendor, which provides that any meat products served to detainees are turkey-based, without pork or beef. (ECF No. 51, ¶20). Turkey is generally considered a food that Muslims can consume. The Court holds that the evidence demonstrates that the Jail did not infringe upon Moon's sincerely held religious beliefs through the diet provided to detainees. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 816 (8th Cir. 2008). Likewise, based upon the meal accommodations afforded to Moon and other detainees, the Court holds that Moon has failed to demonstrate a material question of fact as to whether any of the Defendants placed a "substantial burden" on Moon's free exercise of his religion. *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). As a result, the Court grants summary judgment in favor of Defendants regarding Moon's Halal diet claim.

Next, The Court holds that Moon fails to maintain a free exercise or RLUIPA claim because he was not permitted to have a clock in his pod or cell. Defendant Lt. Stevens attested that pods and cells are not permitted to have clocks for safety and security concerns. Moon has failed to demonstrate that Defendants did not have a legitimate peneological reason for restricting Moon's access to clocks. Likewise, Moon has failed to demonstrate that that the lack of clocks in his pod and cell placed a substantial burden on his free exercise of religion. Therefore, the Court grants summary judgment in favor of Defendants with respect to Moon's claims.

Moon also alleged a violation because he was not permitted to wear his Kufi or prayer cap in the Jail. Jail policy prohibits wearing headgear, but a cap will be provided if covering up ones' head is a requirement to be outside. (ECF No. 51, ¶25). The Jail's restriction on wearing a

Kufi likely could present a RLUIPA claim, but not under the circumstances presented here. *See Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1027–28 (D. Minn. 2010) ("even if a substantial burden existed, the compelling interest of prison safety and security justify these narrowly-tailored regulations, which prohibit the display of the Kufi and medallion outside of an inmate's cell, but allow an inmate to freely wear these items within his cell"). However, "RLUIPA unambiguously conditions receipt of federal prison funds on a State's consent to suit; however, that waiver does not extend to money damages." *Amos v. Karol*, No. 1:14-CV-63 SNLJ, 2016 WL 492707, at *2 (E.D. Mo. Feb. 9, 2016)(citing *Van Wyhe v. Reisch*, 581 F.3d 639, 654 (8th Cir. 2009); *see also Nelson v. Miller*, 570 F.3d 868, 888 (7th Cir. 2009) (a personal capacity suit may is not available against an individual defendant under RLUIPA). Moon's only remaining recourse under this claim is therefore injunctive relief. *Amos*, 2016 WL 492707, at *2. However, any claim for injunctive relief is now moot because plaintiff was transferred out of the Ste. Genevieve County Jail in June 2015. *Id.* Therefore, Defendants are entitled to judgment on Moon's claim against them under RLUIPA.

Moon also complains that he was not provided a prayer rug. The Jail allows Sunni detainees to use their prayer rugs during prayer periods, but the Jail does not provide prayer rugs. (ECF No. 51, ¶21). The Court holds that Moon has no clearly established right to the Jail providing a prayer rug and that the denial of a prayer rug did not preclude his free exercise of religion. *See Shepard v. Peryam*, 657 F. Supp. 2d 1331, 1352 (S.D. Fla. 2009) ("'no prayer rug' policy is clearly reasonably related to a valid governmental security concern; and plaintiff Shepard has a ready alternative to use of a normal prayer rug"). Moon further asserted that the Jail should have provided an Arabic Qur'an or a regular Qur'an, and he was not provided an Imam to perform services at the Jail. Defendants attested that the Jail did not maintain a copy of

the Qur'an, but Moon could have had someone bring him a copy. (ECF No. 51, ¶18). Likewise, the Jail does not provide an Imam; instead, a detainee must obtain his own Imam services. (ECF No. 51, ¶24). The Court holds that the Jail was not required to provide copies of the Qur'an or an Imam. The Jail did not place a substantial burden on Moon's ability to practice his religion because it did not preclude Moon from having the Qur'an or an Imam. *See Amos v. Karol*, No. 1:14-CV-63 SNLJ, 2016 WL 492707, at *3 (E.D. Mo. Feb. 9, 2016) (granting summary judgment in favor of defendant where plaintiff did not show that his requests for a prayer rug, Qu'ran, and access to an Imam were denied at all: "defendant Karol did not deny the requests, but rather she instructed plaintiff regarding how to go about obtaining the items and access to an Imam. Defendant did not pursue those matters before he filed this lawsuit."). Therefore, the Court grants Defendants' Motion for Summary Judgment with respect to Moon's request for the Jail to provide him with a prayer rug, Qur'an and access to an Imam.

### E. Qualified Immunity

"In a § 1983 action, state actors may be entitled to qualified immunity." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (*quoting Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008)); *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 579 (8th Cir. 2009). Qualified immunity is "'*immunity from suit* rather than a mere defense to liability.'" *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806) (emphasis in original); *Robbins v. Becker*, 715 F.3d 691, 693 (8th Cir. 2013). "Qualified immunity shields government actors from suit unless their conduct violates clearly established constitutional or statutory rights that a reasonable person would have known." *Smith*, 586 F.3d at 580 (citing *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006), *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To overcome the

defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). This court may first address either prong. *Id.* (*citing Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).

"Qualified immunity generally shields 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. Jackson,* 600 F.3d 1007, 1012 (8th Cir.2010) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Court finds that Defendants' actions did not violate clearly established constitutional law of which a reasonable person would have known. The Court holds that there is no clearly established statutory or constitutional right implicated by a postcard only policy or related to the type of Halal meal provided. *See, e.g., Thompson v. Williams,* 2007 WL 3244666 at *22 (W.D.Wash.2007)(genuine issues of material fact existed on First Amendment and RLUIPA claims, but finding defendants entitled to qualified immunity because "the majority of circuit and district courts that have looked at this specific issue have concluded there is no such clearly establish right to Halal meals, with or without Halal meat, under the First Amendment's Free Exercise of Religion Clause, RLUIPA or the Equal Protection Clause of the Fourteenth Amendment."); *Jihad v. Fabian,* No. CIV. 09-1604 SRN LIB, 2011 WL 1641885, at *15 (D. Minn. Feb. 17, 2011) (Although there is a clearly established right to religious dietary accommodations, there is no clearly established right to pre-packaged halal meals); *Patel v. United States Bureau of Prisons,* 515 F.3d 807 (8th Cir.2008)(BOP was not required to provide halal meals under the facts of that case); *Pratt v.*

*Corr. Corp. of Am.,* 267 Fed.Appx. 482 (8th Cir.2008)(prison not required to provide diet with halal meat where other food that was halal was provided). The other issues do not rise to constitutional violations. As a result, the Court holds that Defendants are entitled to summary judgment and are further entitled to qualified immunity on the separate issues outlined above.

### F. Injunctive Relief

Moon sued all of the individual Defendants in their official capacity as well as their individual capacity. The official capacity claims seek only injunctive relief against Defendants. However, injunctive relief is moot because Moon is no longer incarcerated at the Jail. See *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) (citing *Wycoff v. Brewer,* 572 F.2d 1260, 1262 (8th Cir.1978) ("a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions"). Thus, for this additional reason, the Court grants Defendants' Motion for Summary Judgment on all of Moon's official capacity claims for injunctive relief.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 47) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Exemption from the Certificate of Service (Service) Requirement (ECF No. 62), Plaintiff's Motion for a Preliminary Injunction (ECF No. 67), and Plaintiff's Motion for Partial Summary Judgment (ECF No. 69) are **DENIED** as moot.

An appropriate Judgment is filed herewith.

Dated this 13th day of November, 2017.

                                              *Ronnie L. White*
                                              **RONNIE L. WHITE**
                                              **UNITED STATES DISTRICT JUDGE**